Law Office of Shmuel Klein, PC
Attorneys for Plaintiff
113 Cedarhill Avenue
Mahwah, New Jersey 07430
(201) 529-3411

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
-------------------------------------------x
LISSANKA JESSICA ALVES

       Plaintiff,                    COMPLAINT
vs.
                                  Plaintiffs Demands A
VERIZON, AT&T               Trial by Jury
AFNI, INC.,
SOUTHWEST CREDIT SYSTEMS, L.P.,
and JOHN DOE 1-10, XYZ, INC 1-10,
ten names being fictitious and
unknown to the plaintiffs, the person
or parties intended being the persons
or parties, if any,
       Defendants.
-------------------------------------------x

## INTRODUCTION

1.    This is an action for damages and declaratory relief by an individual consumer for Defendants' joint and several and repeated violations of the Fair Credit Billing Act, 15 U.S.C. §1666 *et seq.,* (hereinafter FCBA) Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*., (hereinafter FDCPA) and the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. (hereinafter FCRA), the Wire or Radio Communications Act, 47 U.S.C. §201, the New Jersey Consumer Fraud Act, breach of contract, negligence, common law fraud, defamation, and infliction of emotional distress.

## JURISDICTION AND VENUE

2.    Jurisdiction of the Court arises under 28 U.S.C. 1331 in that this dispute involves predominant issues of federal law. Defendants have violated the provisions of

the FCBA, FDCPA and FCRA.  Declaratory relief is available pursuant to 28 U.S.C. 2201 and 2202. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. 1367. Venue in this District is proper in that Plaintiff resides here, Defendants transact business here and the conduct complained of occurred here.

## PARTIES

3.     Plaintiff, LISSANKA JESSICA ALVES, is a natural person residing at 60 Wall St., Newark, New Jersey, 07105, and is a consumer pursuant to FCRA and FDCPA.

4.     Defendant, VERIZON is a telephone service provider with its corporate headquarters located at 140 West St., New York, New York, 10007.

5.     Defendant AT&T is a telephone service provider with its corporate headquarters located at 175 E. Houston St., San Antonio, Texas, 78205.

6.     Defendant Afni, Inc. is a debt collection agency situated at 404 Brock Dr., Bloomington, IL, 61701.

7.     Defendant Southwest Credit Systems, L.P. is a debt collection agency situated at 5910 W Plano Parkway Suite 100, Plano, Texas 75093.

## FACTUAL ALLEGATIONS

8.      Plaintiff's residential line provider was Verizon since 2002.  In 2005, she moved to her current address at 60 Wall St., Newark, New Jersey, 07105.

9.      Although Verizon already provided her with long-distance, she suddenly was sent additional bills from AT&T for long-distance business calls that she had not made.

10.     Plaintiff was sent a bill for $6,671.90 from Defendant AT&T for long-distance calls around September 2006.

11.     Plaintiff called Defendant AT&T repeatedly and informed them that she wasn't their customer, hadn't made those calls and therefore should not have to pay.  AT&T had information on the Plaintiff including her Social Security Number.  Upon information and belief, Defendant Verizon disclosed Plaintiff's information, including her Social Security Number, to AT&T.

12.     When Plaintiff called AT&T and told them that something must be wrong, Defendant AT&T refused to help her, claiming that they couldn't do anything because they couldn't control the calls that Defendant Verizon routed to them. They told the Plaintiff to call Defendant Verizon.  Defendant Verizon in turn referred her to AT&T.

13.     Defendant AT&T eventually sent the debt for $6,671.90 to Southwest Credit Systems, L.P. and started a new account for the Plaintiff without her knowledge. This debt of $6,671.90 was later transferred from Southwest to the collection agency, Defendant Afni Inc.

14.     Eventually, Defendant Verizon sent technicians to Plaintiff's home around January of 2007, but the technicians claimed that there was nothing wrong with her phone.

15.     In January of 2007 Plaintiff discovered that the calls that she was being charged for were made by Triunfo Food Import Inc., a company situated at 27 Malvern St., Newark, NJ, 07105. She went to Triunfo and discussed the matter with an employee at Triunfo. She left him a copy of her phone bill to give to his manager.  The manger called her back and said that the phone number listed on her phone bill, which had been her phone number since 2005, had been Triunfo's phone number for 20 years.  He further admitted to making the calls listed on her phone bill.

16. Plaintiff informed Defendants Verizon and AT&T of her discovery and told them to check the lines. Defendant AT&T told the Plaintiff not to dispute the alleged debt with Afni because they would investigate the matter.

17. Defendant Verizon said that they would undertake an investigation and sent her a check for $10,773.36 on March 2, 2007 to pay her AT&T long-distance phone call bills. This money was to pay for the $6,671.90 from the Plaintiff's first account with AT&T (which had been transferred over to Southwest Credit Systems L.P. and then from Southwest to Defendant Afni Inc.) and for the $4,101.46 on the Plaintiff's new account with AT&T. $4,101.46 was the amount owed as of January 27, 2007. Plaintiff sent the money given to her by Verizon to Defendant AT&T on April 3, 2007.

18. Although Plaintiff paid Defendant AT&T $10,773.36, Plaintiff's credit was already ruined, as the payment was late due to the time it took for Verizon to realize its error.

19. Defendant AT&T, despite having been paid this $10,773.36, continued charging the Plaintiff wrongfully for the calls made by Triunfo Food Import Inc., because Defendant Verizon failed to fix the crossed lines between the Plaintiff and Triunfo until April 2007. By April 27, 2007, AT&T had wrongfully charged the Plaintiff for a further $8,546.84 for long-distance calls she had not made. AT&T eventually transferred this debt to the debt-collection agency, NCO Financial Systems, Inc (second alleged debt).

20. Plaintiff told Defendant Verizon that these actions were ruining her credit so that she couldn't buy a house but Defendant Verizon did nothing.

21. Plaintiff eventually did buy a house in September of 2007 but at a higher interest of 7.8% as a result of her bad credit report, which was due to Defendants Verizon and AT&T's mistakes.

22. Plaintiff further suffered denial of credit and missed business opportunities.

23. From April of 2007, when the Plaintiff's phone line was fixed, to January 2008, the Plaintiff was not charged for any long-distance calls made by Triunfo Food Import Inc., but her phone bills from AT&T still included the $8,546.84 for phone calls made on and before April 2007 when the lines between the Plaintiff and Triunfo were still crossed.

24. During this time, Defendant Afni, Inc., the collection agency, continually sent the Plaintiff letters asking her to pay the $6,671.90 that she still supposedly owed AT&T. However, Plaintiff had already paid to AT&T this first alleged debt with the $10,773.36 that she received from Verizon.

25. When the Plaintiff called Afni Plaintiff that she had sent the money directly to AT&T and that they should verify it with AT&T and stop sending her collection letters for a debt that had already been paid, Afni said they could do nothing about it. It was not their problem because AT&T had not informed them that the debt was paid.

26. Plaintiff had to continually ask AT&T to inform Afni that the debt was paid. In August of 2007 AT&T finally informed Afni that the alleged debt was paid. Afni finally acknowledged that her debt was paid on August 28, 2007, which was around four months after the debt had been paid.

27. Defendant AT&T eventually transferred a debt of $8,568.11, the amount owed by the Plaintiff on her second account with AT&T as of May 27, 2007, to another debt collection agency, NCO Financial Systems, Inc. AT&T then closed the second account

they had on the Plaintiff and started a third account for the Plaintiff without her knowledge yet again.

28.     Around January of 2008, Defendant Verizon sent the Plaintiff $8,568.11 to pay off the debt on her second account with AT&T that AT&T had transferred to NCO Financial Systems, Inc. Plaintiff sent NCO a check for this amount on January 31, 2008.

29.     Plaintiff disconnected her phone in early February 2008, before Valentine's Day.

30.     Defendant AT&T charged the Plaintiff $2,067.24 for phone calls made between March 18 and March 22, 2008 and informed her that if she did not pay by May 5, 2008, the debt would be sent to another collection agency.  AT&T eventually did transfer the third alleged debt to the debt collection agency, Southwest Credit Systems, L.P.

31.     Around April of 2008, Plaintiff sent a dispute letter to each of the Defendant Credit Reporting Agencies, Equifax, Experian and TransUnion disputing the debt and demanding that they delete it from her credit reports.

32.     On May 27, 2008, Plaintiff received a letter from Southwest asking her to pay the $2,067.24 debt she supposedly owes Defendant AT&T.  On June 4, 2008, Plaintiff called Defendant Southwest and disputed the debt, but Southwest insisted that it was her debt and she had to pay it.

33.     Plaintiff received a threatening call on her cell phone on June 17, 2008, from the "Account's Table for AT&T", which, upon information and belief, is AT&T's department for collecting past due payments.  A representative of the Account's Table accused her of committing a federal crime and told her they intended to take her to court and that she should hire a lawyer.

34.     Plaintiff spent $70,000 to remodel her home so that she could have it refinanced, but now since her credit is damaged, she cannot refinance her home, as it will not lower her interest or her Private Mortgage Insurance (PMI).

35.     Plaintiff owns a business, Nass Air Corp., situated in 250 Mcwhorter St., Newark, NJ, 07105, which is a heating and air conditioning business.  As a result of this negative information on her credit report, Plaintiff's business has suffered too.

36.     Plaintiff attempted to obtain a loan for $100,000 in February of 2007 for her business. Due to the negative items on her credit report, she was denied the loan. Furthermore, without the loan, Plaintiff does not have the cash flow to do bigger jobs, such as commercial buildings.  Instead she can only take on little jobs, such as small homes.

37.     In addition, the Plaintiff was forced to lay off about 8 employees throughout the course of 2007 as a result of not being able to obtain this loan.

38.     Thus, the actions of Defendants Verizon, AT&T, and Afni, Inc. have caused a considerable impediment on the Plaintiff's income and have significantly limited her income.

39.     Plaintiff suffered severe emotional distress due to the violative actions of each of the Defendants.

FIRST CLAIM: VIOLATION OF THE FAIR CREDIT BILLING ACT ("FCBA")

40.     Plaintiff re-alleges and incorporates paragraphs 1 through 39 above as if fully set out herein.

41. Defendant VERIZON and Defendant AT&T violated the Federal Fair Credit Billing Act, 15 U.S.C. §1666(a)(A) ("FCBA") by its refusal and failure to timely respond to Plaintiff's disputes.

42. Defendant VERIZON and Defendant AT&T violated the Federal Fair Credit Billing Act, 15 U.S.C. §1666(a)(B)(i) ("FCBA") by its failure to make appropriate corrections in the account of the Plaintiff, including the removal of amounts erroneously billed, and by its failure to notify the Plaintiff, in writing of its errors, its failure to include an explanation of any change in the amount indicated by the Plaintiff, and its failure to notify the credit bureaus of its error.

43. As a result of Defendant AT&T and Verizon's repeated violations of the FCBA, Defendants are liable to Plaintiff for actual and statutory damages and for attorney's fees and cost pursuant to 15 U.S.C. §1640.

## SECOND CLAIM: VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT

44. The allegations of paragraphs 1-43 in this pleading are incorporated as if fully rewritten herein.

45. Defendant Afni, Inc. and Defendant Southwest violated 15 U.S.C. 1692d(5) by repeatedly calling the Plaintiff in an attempt to collect the debt.

46. Defendant Afni, Inc. and Defendant Southwest violated 15 U.S.C. 1692e(2) by misrepresenting the amount and legal status of the debt, stating that Plaintiff owed money to AT&T, with total disregard to the truth of the matter.

47. Defendants Afni, Inc. and Defendant Southwest violated 15 U.S.C. 1692e(5) by threatening to take the Plaintiff to court when they knew or should have known that they could not legally take this action or when they did not intend to take this action.

48. Defendant Afni, Inc. and Defendant Southwest violated 15 U.S.C. 1692e(8) by communicating false credit information and attempting to collect a debt when said debt was disputed, and failing to inform the credit bureaus that the Debt is disputed.

49. Defendants violated 15 U.S.C. 1692e(10) by threatening to sue the Plaintiff in an attempt to coerce her to pay the debt.

50. Defendants violated 15 U.S.C. 1692f(1) by attempting to collect an amount not authorized or permitted by law;

51. Defendant Afni, Inc. and Defendant Southwest violated 15 U.S.C. 1692g(b) by failing to cease collection efforts until the debt has been validated.

52. As a direct and proximate result of thereof, Plaintiff has been injured and may continue to suffer such injury in the future.

53. As a direct and proximate result of the above violations of the FDCPA, Defendant Afni, Inc. and Defendant Southwest are liable to Plaintiff for declaratory judgment that Defendant's conduct violated the FDCPA, and Plaintiff's actual damages, statutory damages, and costs and attorney's fees.

THIRD CLAIM: VIOLATION OF THE FAIR CREDIT REPORTING ACT ("FCRA")

54. The allegations of paragraphs 1-53 in this pleading are incorporated as if fully rewritten herein.

55. Defendant AT&T is a "user" of credit information and "furnisher" of credit information as stated in the Fair Credit Reporting Act.

56. The consumer reporting agencies maintain subscriber contracts and relationships with Defendants AT&T, under which Defendant is allowed to report credit data and have same placed in the credit reporting files and records of those entities so that such data may be further reported to any and all of the thousands of subscribing entities and persons.

57. Under the subscriber contracts Defendant AT&T owe a number of duties, including the duty to report truthful and accurate information about its customers and other consumers, including Plaintiff.

58. In and after around January 2007, until the present time, Defendant AT&T, has been and is continuously violating the Fair Credit Reporting Act, 15 U.S.C. §1681s-2[b] by furnishing to credit reporting agencies inaccurate information about the debt, failing to state that the debt was disputed, failing to verify the debt.

59. Defendant AT&T willfully violated the mandates of section 1681s-2[b] by failing to conduct an investigation with respect to the disputed information, failing to report the results of the investigation to the consumer reporting agencies, and failing to modify or delete the disputed item of information. Such violations form the basis of negligence per se claim and an intentional tort, per se.

60. Defendant AT&T knew or should have known or consciously avoided knowing that the information repeatedly reported about Plaintiff was false and improperly attributed to Plaintiff. Defendant was further notified by plaintiff of their failure to validate and that debt is disputed, yet Defendant failed to report such information as disputed to the consumer reporting agencies.

61. Said information was negative and damaging to Plaintiff. Plaintiff sustained a higher APR on her mortgage, business credit line denial and a mortgage refinance denial and this information affected Plaintiff's credit score which affected Plaintiffs ability to obtain credit at the best terms possible.

62. Defendants recklessly, maliciously and/or intentionally, published and disseminated false and inaccurate information concerning Plaintiff with reckless disregard for the truth of the matters reported.

63. Defendants' publishing of such false and inaccurate information has severely damaged the personal and consumer reputation of Plaintiff and caused severe humiliation, and emotional distress and mental anguish.

64. Defendants were aware that its reportings and activities would [and will] damage plaintiff and her ability to enjoy life and utilize her credit and reputation property rights she secured by honoring her obligations to her creditors.

65. As a direct and proximate result of thereof, Plaintiff has been injured and may continue to suffer such injury in the future.

66. As a direct and proximate result of the above violations of the FCRA, Defendant AT&T is liable to Plaintiff for declaratory judgment that Defendant's conduct violated the FCRA, and Plaintiffs' actual damages, statutory damages, and costs and attorney's fees, pursuant to 15 U.S.C. 1681(n) and 15 U.S.C. 1981(o).

## FOURTH CLAIM: VIOLATION OF WIRE OR RADIO COMMUNICATIONS ACT, 47 U.S.C. 201 et seq.,

67. Plaintiff hereby incorporates the allegations set forth in paragraphs 1-66 as if fully rewritten herein.

68.     Defendants Verizon and AT&T violated 47 U.S.C. § 201(b) by charging unjust and unreasonable charges to Plaintiff in connection with telephone service.

69.     Defendants Verizon and AT&T violated 47 U.S.C. § 228(d)(1)(A) by failing to ensure that Plaintiff would not be billed for per call services she never used.

70.     Defendants Verizon and AT&T violated 47 U.S.C. § 258(b) by unlawfully allowing AT&T to serve as Plaintiff's phone carrier without her knowledge or permission, and in spite of her request to stop charging her and fix the error in the phone lines.

71.     As a direct and proximate cause of Defendants' negligent actions regarding phone service to Plaintiff, Plaintiff has been injured and may continue to suffer such injury in the future.

72.     Defendants Verizon and AT&T are liable to Plaintiff for damages their actions caused, pursuant to 47 U.S.C. §206 and for a Judgment pursuant to 47 U.S.C. § 207 that Defendants actions violated the Wire or Radio Communications Act.

   FIFTH CLAIM: VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT

73.     Plaintiff hereby incorporates the allegations set forth in paragraphs 1-72 as if fully rewritten herein.

74.     Plaintiff is entitled to relief for Defendants' joint and several violations of the New Jersey Consumer Fraud Act, pursuant to N.J.S.A. 56:8-19.

75.     Defendants violated the NJ Consumer fraud act, N.J.S.A 56:8-87. by unlawfully charging Plaintiff for service by a provider she never agreed upon and for calls she never placed.

76. Defendants AT&T and Verizon violated the NJ Consumer fraud act, 56:8-88 By its failure to correct its technical and billing errors associated with Plaintiff's phone line, even after her request for them to do so.

77. As a result of Defendants' violation of the NJ Consumer Fraud Act, Plaintiff has suffered damages.

78. Plaintiff seeks to recover actual, statutory and punitive damages for Defendants joint and several repeated violations of the NJ Consumer Fraud Act, pursuant to N.J.S.A. 2A:32-1.

## SIXTH CLAIM: NEGLIGENCE

79. Plaintiff hereby incorporates the allegations set forth in paragraphs 1-78 as if fully rewritten herein.

80. Defendant Verizon had a duty of care to Plaintiff in maintaining her telephone line and account.

81. Defendant AT&T had a duty to ensure that it bills the proper owner of the long distance subscribership for the calls that they made, and that they do not bill Plaintiff, who was never their consumer, never agreed to their long distance phone service and never placed any long distance phone calls with AT&T.

82. Defendant Verizon and AT&T negligently intertwined two phone accounts into the same phone number, causing undue charges to Plaintiff.

83. Defendants intentionally, willfully and maliciously and/or negligently charged Plaintiff for calls she never placed.

84. Defendants intentionally, willfully and maliciously and/or failed to properly investigate Plaintiff's claim that she had not made the calls and that her phone number was the same as that of Triunfo Food Import Inc.

85. Defendants intentionally, willfully and maliciously and/or failed to correct the problem and stop charging Plaintiff.

86. Defendants failed to properly, timely credit Plaintiff for the charges and credits due Plaintiff.

87. As a direct and proximate result of Defendants' acts and omissions, Plaintiff has suffered damages, past, present and future, including but not limited to, ruined credit, excessive finance charges, lost opportunity, lost time, mental anguish, anxiety, distress, loss of economic opportunity, monetary loss, humiliation, embarrassment and aggravation, together with costs and attorney fees incurred in obtaining relief from Defendants' wrongful acts and omissions.

## SEVENTH CLAIM: BREACH OF CONTRACT

88. Plaintiff hereby incorporates the allegations set forth in paragraphs 1-87 as if fully rewritten herein.

89. Plaintiff and Defendant Verizon, as telephone service provider, entered into a contract which required Defendant to provide Plaintiff with a telephone line and telephone number, and charge her according to the calls she placed. Defendant owed a duty of reasonable care to Plaintiff to prevent simultaneous assignment of the same phone number by another phone provider with another customer.

90. Defendants breached its contract by failing to ensure that Plaintiff can enjoy her phone line according to her subscribership, by intertwining her phone number with another consumer's line.

91. Defendants breached their contract by failing to resolve the technical and billing errors, causing Plaintiff's excellent credit to become ruined.

92. Plaintiff is entitled for all payments and charges to be fully refunded and for compensation of damages caused by Defendants actions, including but not limited to ruined credit, excessive finance charges, lost opportunity, lost time, mental anguish, anxiety, distress, loss of economic opportunity, monetary loss, humiliation, embarrassment and aggravation, together with costs and attorney fees incurred in obtaining relief from Defendants' wrongful acts and omissions.

## EIGHTH CLAIM: COMMON LAW FRAUD

93. Plaintiff hereby incorporates the allegations set forth in paragraphs 1-92 as if fully rewritten herein.

94. Defendants fraudulently charged Plaintiff for long distance telephone charges that she did not make.

95. Defendants fraudulently gave Plaintiff a phone number that was in use by someone else.

96. Defendants fraudulent misrepresented to Plaintiff that they would cease charging her for the AT&T long distance charges but continued billing her.

97. Defendants made numerous fraudulent misrepresentations and committed numerous fraudulent acts throughout the course of Plaintiff maintaining her phone contract with Verizon.

98. Defendants knowingly and willfully made misrepresentations about Plaintiff's account to the credit reporting agencies. The Defendants knew that these representations were false when they made them.

99. The Defendants knew or had reason to know that their misrepresentations would cause monetary damages to Plaintiff.

100. Plaintiff relied on the Plaintiffs' false representations that they would correct the problem, to her detriment and suffered damages. Plaintiffs' reliance on the Defendants' misrepresentations was reasonable and justified because they had the right to expect the Defendants to meet their promised obligations.

101. As a direct result of Defendants fraudulent actions and misrepresentations, Plaintiffs have suffered damages.

102. The Defendants acted with the deliberate purpose in harming Plaintiff and are liable to Plaintiff therefore.

NINTH CLAIM: DEFAMATION

103. The Plaintiff re-alleges and incorporates paragraphs 1 through 102 above as if fully set out herein.

104. Defendants recklessly, maliciously and/or intentionally, published and disseminated false and inaccurate information concerning plaintiff with reckless disregard for the truth of the matters asserted.

105. Defendants were notified of inaccuracies and problems by plaintiff, however, the Defendants continued to issue and/or publish report(s) to third parties, which contained inaccurate information about plaintiff.

106. Defendant's publishing of such false and inaccurate information has severely damaged the personal and consumer reputation of plaintiff and caused severe humiliation, emotional distress and mental anguish to plaintiff.

107. Defendants acted with willful intent and malice to harm plaintiff.

### TENTH CLAIM: INFLICTION OF EMOTIONAL DISTRESS

108. Plaintiff hereby incorporates the allegations set forth in paragraphs 1-107 as if fully rewritten herein.

109. This claim is for tortuous infliction of emotional distress caused to Plaintiff by Defendants.

110. Defendants' acts as described above were done negligently, willfully and recklessly.

111. During the course of their actions, and subsequent thereto, Defendants have recklessly and/or intentionally caused severe emotional distress to Plaintiff without protection of law and at a time when they knew or should have known that its actions would do so.

112. As a direct and proximate result thereof, Plaintiffs was injured and may continue to suffer such injury in the future. Defendants are liable to Plaintiff therefore.

### PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues and all claims.

**WHEREFORE,** Plaintiff respectfully prays that judgment be entered against Defendants for the following:

A. Declaratory judgment that Defendants' conduct violated the FCBA, FDCPA, FCRA, NJ Consumer Fraud Act and common law claims and, and declaratory and injunctive relief for Defendants' violations thereof;

B. Actual damages as proven at trial, on each and every claim;

C. Statutory damages, where applicable;

D. Punitive damages, where applicable;

E. Treble damages, where applicable;

F. Costs and reasonable attorney fees; and

G. For such other and further relief as may be just and proper.

DATED: June 26, 2008
    Mahwah, NJ                         _____/s/_____
                                        Law Office of Shmuel Klein, PC