Law Office of Shmuel Klein, PC
113 Cedarhill Avenue
Mahwah, New Jersey 07430
201-529-3411
Attorney for Plaintiff

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

-----------------------------------------------X

LISSANKA JESSICA ALVES
      PLAINTIFF                        Case No. 08-3196

-AGAINST-

                                   **FINAL PRE-TRIAL ORDER**

VERIZON, AT&T                   Trial by Jury
AFNI, INC., SOUTHWEST CREDIT
SYSTEMS, L.P., and JOHN DOE 1-10,
XYZ, INC 1-10, ten names being fictitious
and unknown to the plaintiffs, the person      HON. WILLIAM H. WALLS
or parties intended being the persons
or parties, if any,
      DEFENDANTS.

-----------------------------------------------X

A final pretrial conference having been held before the Honorable Claire C. Cecchi, U.S.M.J.,

Shmuel Klein of the Law Office of Shmuel Klein PC having appeared for plaintiff, and Debra

Sahler of Ventatonio & Wildenhian, PC for Verizon New Jersey Inc. (hereinafter "Verizon") and

Anthony J. Zarillo, Jr. of Bevan, Mosca, Giuditta, & Zarillo for AT&T Corp. "AT&T" having

appeared for defendants, the following Final Pretrial Order is hereby entered:

1. **JURISDICTION** (set forth specifically)

    1.     Jurisdiction of the Court arises under 28 U.S.C. 1331 in that this dispute involves

predominant issues of federal law. Declaratory relief is available pursuant to 28 U.S.C. 2201 and

2202. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. 1367.

Venue in this District is proper in that Plaintiff resides here, Defendants transact business here

and the conduct complained of occurred here.

Defendant Verizon submits that there are no federal issues of federal law remaining and that jurisdiction does not lie.

2. **PENDING/CONTEMPLATED MOTIONS** (Set forth all pending or contemplated motions, whether dispositive or addressed to discovery or the calendar.
Also, set forth the nature of the motion and the return date. If the Court indicated that it would rule on any matter at pretrial, summarize that matter and each party's position.)

Plaintiff

Plaintiff will file motions in limine to exclude objected to exhibits, witnesses not deposed and new legal defense theories of defendants not contained in their answers or discovery.

Motion in Limine- Plaintiff will make at the time of trial that the right to a credit against a verdict of any settling defendant shall not be credited as the alleged liability of the settling defendants was different from the liability of AT&T and Verizon.

Plaintiff will file a motion to have the facts stated in the Opinion of the Honorable William H. Walls, United States Senior District Judge dated July 27, 2010  as the Law of the Case and pursuant to FRCP 56(g).

Plaintiff will request that any defendant motions be filed within one week of the entry of this order and that the return date for said motion(s) be before April 18, 2011 or after May 12, 2011 as a result of the Passover Holiday.

Plaintiff will respectfully demand that liability and damages be tried together.

Motion for Judgment as a Matter of Law

Plaintiff anticipates at the close of each of the defendant's cases, Plaintiff will make a Motion for Judgment as a Matter of Law under Rule 50, based on Defendants' failure to introduce any defenses for its acts.

In the event of a judgment by the jury in favor of plaintiff against AT&T, and or Verizon, Plaintiff will move for attorney fees and punitive damages.

In the event of a judgment by the jury in against plaintiff, Plaintiff will renew its Motion for Judgment as a Matter of Law.

AT&T

Motion In Limine

1,      AT&T intends to make a Motion In Limine asking the court to exclude: (1)  any
evidence offered by the plaintiff seeking to prove alleged economic damages suffered, including
economic business losses and lost profits,  personal economic losses, (2) any evidence offered by
plaintiff seeking to prove alleged denial of credit, and (3) any evidence offered by plaintiff
seeking to prove AT&T violated any of the statutory claims contained in plaintiff's Complaint.

The basis of this motion is the Order of Judge William H. Walls issued on July 27, 2010
concluding that the plaintiff cannot demonstrate AT&T's delinquency on her credit report was a
substantial factor that resulted in any credit denials, that the plaintiff cannot demonstrate she
received a higher interest rate on her personal mortgage loan, the plaintiff cannot demonstrate
she suffered any business losses or lost profits, and dismissing all claims associated with the
specific claims relating to violations of stated statues.
Return Date:  April 18, 2011

2.      Motion in Limine (if necessary) for punitives to be tried separately consistent with the
Punitive Damages Act of New Jersey. Further, to the extent that punitive are permitted to be
pursued, evidence relevant only to punitive damages shall not be admissible in the liability and
compensatory damages phase.

3.      Motion in Limine- AT&T will make at the time of trial that the right to a credit against a
verdict of the percentage share of Southwest and AFNI's liability in accord with the order of
Judge Walls, April 13, 2009.

4.      Motion for Judgment as a Matter of Law

AT&T anticipates at the close of plaintiff's case, AT&T will make a Motion for Judgment as a
Matter of Law under Rule 50, based on plaintiff's failure to prove any measurable damages and
the resulting inability of a reasonable jury to have a legally sufficient evidentiary basis to find for
the plaintiff.

In the event of a judgment by the jury in favor of plaintiff against AT&T, AT&T anticipates to
renew its Motion for Judgment as a Matter of Law.


Verizon Motion In Limine

Verizon intends to make the following Motions in Limine. Concerning their return dates, it is
anticipated that the return date will be April 18, 2011 or the one following April 18th, 2011.

1.  Motion In Limine - Plaintiff needs to prove that "Verizon acted negligently in failing to
    follow proper standards." (from Page 8 of Judge Walls' order).  Plaintiff needs to establish
    what the proper standards are and that Verizon was negligent in failing to follow them.

2.  Motion in Limine – Plaintiff cannot proceed against Verizon for both a breach of contract and negligence claim. Under New Jersey law, a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law. Plaintiff was a Verizon customer to providing a particular service and a contract normally will define the scope of the parties' specific obligations.  Saltiel v. GSI Consultants, Inc.  170 N.J. 297, 316, 788 A.2d 268, 280 (N.J.,2002). If this case gets submitted to a jury, plaintiff cannot have both breach of contract and negligence charges.

These motions (motion one and two) may be combined.

3.  Motion In Limine to exclude plaintiff from offering evidence, eliciting testimony, or making arguments concerning plaintiff's alleged economic damages, including denial of credit, loss of credit, missed job opportunities or increased mortgage rates.

4.  Motion In Limine to exclude any evidence and argument anticipated by plaintiff to allege Verizon violated any of the statutory claims contained in plaintiff's Complaint.

5.  Motion In Limine to exclude any evidence that Plaintiff's visit to the Hospital was due to any alleged tort on the part of defendants.

6.  Motion In Limine to exclude any testimony or reference to any conversations that Plaintiff had with anyone from Three Brothers or Triunfo as hearsay.

7.   Motion in Limine – that the Verizon customer service representatives referred to Plaintiff's alleged issue as "crossed wires", is not a determination of whether the Plaintiff's telecommunication wires were indeed crossed.  Any document referring to "crossed wires" must be redacted.

8.  Motion in Limine (if necessary) for punitives to be tried separately consistent with the Punitive Damages Act of New Jersey. Further, to the extent that punitive are permitted to be pursued, evidence relevant only to punitive damages shall not be admissible in the liability and compensatory damages phase.

9.  Motion In Limine-The hospital records of St. James Hospital, records of Dr. Lind, and/or Dr. Isabeen are inadmissible hearsay and cannot be introduced at trial. Further, these records, never exchanged during discovery, but only submitted in a "sur-reply" by Plaintiff in their opposition to the summary judgment motions, cannot go to the truth of the matter that Plaintiff sought any treatment for anything related to this matter. The records including lab tests, bills, and prescriptions are hearsay.

10.   Motion In Limine- Anticipated testimony that any doctor, including Dr. Tasheen, referenced in Plaintiff's sur-reply certification, ordered Plaintiff to not work, must be barred as hearsay.

11. Motion in Limine- Verizon will make at the time of trial that the right to a credit against a verdict of the percentage share of Southwest and AFNI's liability in accord with the order of Judge Walls, April 13, 2009.

12. Motion In Limine – Verizon paid the bills and our obligations are over as plaintiff accepted the checks for payment of the debts.

13. Motion for Judgment- Verizon anticipates moving at the close of Plaintiff's case for Judgment as a matter of law under Rule 50.


3. **STIPULATION OF FACTS** (Set forth in numbered paragraphs all uncontested facts, including all answers to interrogatories and admissions, to which the parties agree.) (S.F.)

1.      AT&T is a long distance telephone service provider, which provided long distance telephone service in the Newark, New Jersey area and beyond during the period from September, 2006 through February, 2008.

2.      Verizon is a local telephone service provider which provided local telephone service to Plaintiff during the period from September, 2006 through February, 2008.

3.      Plaintiff's telephone number, 973-344-0163, was assigned to the Plaintiff.

4.      During the period 2005 through February 2008, the Plaintiff's address was 60 Wall Street, Newark, New Jersey.

5.      Triunfo Foods Import Inc. ("Triunfo"), a/k/a Three Brothers Provisioning, is a company located in Newark, New Jersey.

6.      AT&T billed Plaintiff for certain long distance telephone calls.

7.      The Plaintiff complained to AT&T and Verizon asserting she did not make the calls associated with the AT&T bills.

8.      On or about March 2, 2007, Verizon sent Plaintiff a check in the amount equal to or approximate to $10,773.36.  On or about January, 2008, Verizon sent Plaintiff a check in the amount equal to or approximate to $8,568.11.

9.     On April 19, 2007, the Plaintiff stated she needed a letter from AT&T indicating account number 055341561001 had a zero balance.  AT&T faxed the letter.

4. **CONTESTED FACTS** (Proofs shall be limited at trial to the contested facts set forth. Failure to set forth any contested facts shall be deemed a waiver thereof.)

<u>**Plaintiff**</u>

1.     Plaintiff is a New Jersey resident, who moved to her current residence in Newark, New Jersey, in 2005. (Pl. Rule 56.1 St.

2.     AT&T Mobility LLC Corporate Office Headquarters is located at Glenridge Highlands Two, 5565 Glenridge Connector Atlanta, GA 30342 which reported revenue for 2010 of $124,280,000,000.00 (On Hundred and twenty-four billion, two hundred and eighty million dollars).

3.     Verizon Corporate Office | Headquarters 140 West St. New York, NY 10007 which reported revenue for 2010 of $124,280,000,000.00 (On Hundred and twenty-four billion, two hundred and eighty million dollars).

4.     Plaintiff alleges damages in excess of $75,000.00

5.     Triunfo had previously been assigned the telephone number, 973-344-0163.

6.     AT&T did not provide local telephone or long distance telephone service to the Plaintiff.

7.     During the period 2005 through February 2008 Verizon was the Plaintiff-selected pre-subscribed long distance telephone service provider.

8.     The Verizon local telephone switch recognizes the destination of the call and routes the call to that destination.

9.      Verizon's local telephone switch typically sends long distance calls to the customer-selected pre-subscribed long distance provider.   With respect to Ms. Alves, it did not. The calls instead were sent to the AT&T network termination.

10.      During the period from September, 2006 through February, 2008, telephone calls identified by Verizon as originating on telephone number 973-344-0163, destined for termination outside Verizon's local service area, were sent to AT&T for termination.

11.       Verizon repair records show calls were sent to AT&T even though the Plaintiff was presubscribed to Verizon.

12      Verizon told the Plaintiff that Verizon had caused the problem and that Verizon would send her a check to cover the cost of the AT&T billed calls.

13.      Upon investigation of Plaintiff's complaint by Verizon concerning calls for which Plaintiff asserted she did not make, Verizon discovered the Plaintiff's telephone lines were crossed with those of Triunfo foods.

14      Plaintiff informed both AT&T and Verizon of her discovery.  Each of the aforesaid Defendants noted the same in their computer systems.

15.      From September 2006 through February 2008, plaintiff was billed by AT&T for long distance phone calls which she did not make.

16.      In September 2006, plaintiff received a bill from AT&T in the amount of $6,671.90.

17.       Plaintiff called Verizon and AT&T and informed each them that she was not an AT&T customer and that she disputed the bills.

18.      Notwithstanding the dispute, AT&T sent a debt alleged of Plaintiff in the amount of $6,671.90 to a debt collection agency, Southwest Credit Systems, L.P. ("Southwest Credit). The debt was later transferred to a different debt collection agency, AFNI Inc.

7

19.     The debt was reported to the three major credit reporting agencies, Trans Union, Experian and Equifax.

20.     AT&T then began a second account for plaintiff, without Plaintiff's permission.

21.     Only after numerous calls, on January 24, 2007, AT&T put on hold an outside collection agency's efforts to collect plaintiff's past due collections. (AT&T St. ¶ 23.)

22     On March 2, 2007, Verizon sent plaintiff a check in the amount of $10,773.36 to Plaintiff. (Pl. St. ¶ 10.) Plaintiff sent the funds to AT&T.  Of this amount, $6,671.90 covered the bill for charges by AT&T which had been sent for collection to Southwest and AFNI.  The remaining $4,4101.46 covered charges by AT&T as of January 27, 2007 on the second account that AT&T had established for Plainitff.

23.     On April 19, 2007, AT&T sent plaintiff a letter informing her that it had received her check for $6,671 and that she had a zero account balance.  AT&T also had a call with plaintiff and her mortgage lender that day, stating that her account had zero balance.

24.     The AT&T debt was reported on plaintiff's credit reports for four months after she had paid the bill.

25.     AT&T continued billing plaintiff. By April 27, 2007, AT&T had charged her an additional $8,546.84 for long-distance calls she had not made. AT&T transferred this debt to a different debt collection agency, NCO Financial Systems, Inc. AT&T then closed the second account it had started for plaintiff and opened a third account without her knowledge or permission.

26.     Meanwhile, plaintiff had been consistently calling Verizon to fix the problem. She called Verizon on February 1, March 9, April 15, April 24, April 28, and June 13. Each time, Verizon promised to fix the problem within a few days at most, but each time Verizon failed to do so.

27.     Plaintiff notified Verizon that the AT&T charges were being reported to the credit reporting agencies and ruining her credit. .

28.     From April 2007 to January 2008, plaintiff was not charged for Triunfo's calls, but her phone bills still included the $8,546.84 for phone calls made on and before April 2007.  During this time, AFNI continually sent her letters to pay the original debt of $6,671.90 that she had been billed for, even though she already paid this debt.

29.     AT&T told AFNI in August 2007 that this debt was paid. AFNI acknowledged this debt had been paid on August 28, 2007.

30.     Around January 2008, Verizon sent Plaintiff a check in the amount of $8,568.11 to cover the debt on her second account with AT&T that had been transferred to NCO. She sent NCO a check for this amount on January 31, 2008.

31.     Plaintiff discontinued her Verizon phone service in early February 2008.

32.     AT&T charged Plaintiff an additional $2,067.24 for phone calls between March 18 and March 22, 2008.

33.     AT&T eventually transferred this alleged debt to Southwest Credit for collection.

34.     On May 27, 2008, Plaintiff received a letter from Southwest asking her to pay the debt allegedly owed to AT&T. (Pl. St. ¶ 25.) On June 4, 2008, she called Southwest to dispute the debt, but Southwest insisted that she had to pay it.

35.     AT&T billed Plaintiff and Triunfo for the same charges.

36.     In June 17, 2008, Plaintiff has received calls on her cell phone from "Account's Table for AT&T," which is AT&T's department for collecting past due payments. (Pl. St. ¶ 26.)

37.     AT&T told her not to dispute the alleged debt with AFNI while it looked into the matter.

38  Plaintiff  reported the crossed lines to Verizon on January 8, 2007, at 3:47 p.m., and to AT&T on that same day at 5:48 p.m. (Pl. St. ¶¶ 8, 9.) AT&T had a telephone call with Verizon about this matter on January 17, 2007. (Pl. St. ¶ 9.) AT&T told plaintiff that it had no control over the main switch, which routed the calls.

39.      Triunfo Foods Import Inc. ("Triunfo"), a/k/a Three Brothers Provisioning is a customer of AT&T.

40.      Plaintiff retained the Law Office of Shmuel Klein, PC and paid the required retainer fee and has incurred additional damages in the form of attorney fees and costs as a direct result of the Defendants Verizon and AT&T's conduct as alleged herein.

41.      Plaintiff filed a complaint on June 26, 2008, naming Verizon, AT&T, AFNI and Southwest as Defendants. She alleged that defendants violated the Fair Credit Billing Act, 15 U.S.C. § 1666 et seq.; the Fair Debt Collections Act, 15 U.S.C. § 1692; the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.; the Wire or Radio Communications Act, 47 U.S.C. § 201, and the New Jersey Consumer Fraud Act. Plaintiff also alleged that defendants committed common law fraud, negligence, beach of contract, defamation and infliction of emotional distress. She seeks a declaratory judgment that defendants' conduct was unlawful, actual damages, statutory damages, punitive damages, treble damages, costs, and reasonable attorney fees.

1.1 Liability:

       AT&T:  Wire or Radio Communications Act 201(b) (Fourth Claim) Negligence (Sixth Claim), Common Law Fraud (Eighth Claim), Defamation (Ninth Claim) Infliction of Emotional Distress.

Verizon:  Wire or Wire or Radio Communications Act 201(b) (Fourth Claim) Negligence

(Sixth Claim), Breach of Contract (Seventh Claim) Common Law Fraud (Eighth Claim),

Infliction of Emotional Distress (Tenth Claim).

2.      Damages: $100,000,000.00 for each claim above and in addition thereto:

a)      Attorney Fees

b)      Costs of Litigation

c)      Punitive Damages

d)      Compensatory Damages

e)      Actual Damages

f)      Future Damages

g)      Incidental Damages

h)      Special Damages


B. Defendants:

**<u>AT&T:  Contested Facts:  Liability</u>**

1.       Plaintiff's telephone number, 973-344-0163, was assigned to the Plaintiff by Verizon.

2.       Triunfo had previously been assigned the telephone number, 973-344-0163 by another

local telephone company, before Verizon assigned the same number to the Plaintiff.

3.       AT&T did not provide local telephone service to the Plaintiff.

4.       During the period 2005 through February 2008 Verizon was the Plaintiff-selected pre-

subscribed long distance telephone service provider.

5.      Telephone calls originating on number 973-344-0163 during the period September, 2006 through February, 2008 first traveled through a Verizon local switch which routed the long distance calls to the AT&T long distance network for termination.

6.      The Verizon local telephone switch recognizes the destination of the call and routes the call to that destination.

7.      Verizon's local telephone switch typically sends long distance calls to the customer-selected pre-subscribed long distance provider.   With respect to Ms. Alves, it did not. The calls instead were sent to the AT&T network termination.

8.      When a Verizon customer has selected Verizon as her long distance carrier, and her calls are sent to AT&T or a carrier other than Verizon, this is most likely due to a programming error in the Verizon local telephone switch.

9.      In those instances when long distance calls are directed to a carrier other than Verizon, the Verizon local telephone switch sends the long distance telephone company the originating telephone number and the calling party's name and address for billing purposes.

10.     All telephone calls originating on number 973-344-0163  first went  through the Verizon local telephone switch before being transferred to the AT&T long distance network.

11.     During the period from September, 2006 through February, 2008, telephone calls identified by Verizon as originating on telephone number 973-344-0163, destined for termination outside Verizon's local service area, were sent to AT&T for termination.

12.      Verizon repair records show calls were sent to AT&T even though the Plaintiff was presubscribed to Verizon.

13.     Verizon told the Plaintiff that Verizon had caused the problem and that Verizon would send her a check to cover the cost of the AT&T billed calls.

14.     Upon investigation of Plaintiff's complaint by Verizon concerning calls for which Plaintiff asserted she did not make, Verizon discovered the Plaintiff's telephone lines were crossed with those of Triunfo foods.

15.     AT&T could not investigate the technical problem with the Plaintiff's telephone line because Verizon owned the local telephone switching facility.

16.     If there is a technical problem with the Verizon local telephone switch, another carrier such as AT&T could not investigate the customer's complaint.

17.     On July 16, 2007, Julio Cirilo, a Verizon employee, wrote a letter stating the Plaintiff's Verizon telephone lines were crossed from May 2006 with that of Triunfo Foods Products.

18.     The lines that were crossed were Verizon's and therefore, were under their direct dominion and control.

19.      At the time he wrote the July 16, 2007 letter, Mr. Cirilo acknowledged Verizon's lines were crossed between the Plaintiff and Triunfo Foods Products.

20.      Clara Mejias, a Verizon employee, sent an email to Mary Harrell, another Verizon employee, on January 14, 2008 stating Verizon should make an adjustment to Plaintiff's account because billing by AT&T to Plaintiff was Verizon's fault.

21.     On January 24, 2007, AT&T submitted an outside collection agency retrieval to put the Plaintiff's past due collections on hold.

22.      On April 19, 2007, AT&T sent the Plaintiff a letter informing her AT&T received a check in the amount of $6,671 and her account had a zero balance.

23.      On April 19, 2007, AT&T e-mailed Dunn and Bradstreet advising that negative information associated with AT&T should be removed from plaintiff's account.

24.     On July 16, 2007**,** Julio Cirilo, a Verizon employee, wrote a letter stating the Plaintiff's crossed lines resulted "in all credit bureaus show her as delinquent and has negatively impacted her credit rating."

25.     On August 22, 2007, Ms. Alves requested from AT&T a letter stating that AT&T is not at fault and that Verizon should be responsible for payments on her accounts because the usage was sent to AT&T by mistake, when if fact the calls were made by another customer .

## AT&T:  Contested Facts:  Damages

1,      The AT&T payment delinquency was removed from the Plaintiff's credit report in 2008.

2.      The Plaintiff never sought professional medical advice for her alleged emotional distress.

3.      The Plaintiff did not suffer any physical damages.

4.      Plaintiff  has not submitted any testimony or statement from an expert to causally connect her alleged damages to any negligence or tort by AT&T or Verizon.

5.      Plaintiff has not retained an expert or doctor to treat her for the emotional distress she alleges to have suffered from the actions of Verizon or AT&T.

## Verizon:  Contested Facts:  Liability

1.   Plaintiff was billed for calls from AT&T, a separate company of Verizon.

2.      Plaintiff previously had someone from her home make calls that she did not authorize and as a result Plaintiff had a long distance block on her line.

3.      Triunfo a/k/a Three Brothers Provisioning was an AT&T customer.

4.      The calls at issue came from the number 973-344-0163.

5.      The calls may have been made by Plaintiff.

6.      The AT&T account number assigned to Three Brothers Provisioning a/k/a Triunfo and Plaintiff was the same.

7.   During the period 2005 through February 2008 Plaintiff requested from Verizon that her ability to make long distance calls be blocked. She could make long distance calls by entering an access code.

8.   As to the reasons why Plaintiff's problem may have existed include:  fraud on the line; tampering with the line; a computer error; a switch error; the competitive local telephone provider could have left that number programmed in their local switch, even after the customer thought they disconnected the number and Verizon assigned it to Ms. Alves; a business customer such as Three Brothers could have had equipment at their location which they program similar to a switch to show a particular number as their caller I.D. number or originating number; and possibility a provisioning error:  a human error assigning the telephone number in the local switch could have caused this alleged problem.

9.      Verizon sent out many technicians to look into Plaintiff's alleged problem and performed many checks on their system to try to find out the source of the problem.

10.     Julio Cirilo, a Verizon manager in customer service, gave plaintiff his personal cell phone number and undertook to try to solve Plaintiff's telephone problems. Plaintiff threatened to go to the media with her alleged problem and Mr. Cirilo advised Plaintiff to speak with him to try to resolve this issue. In response to her request, Mr. Cirilo wrote a letter stating the Plaintiff's Verizon telephone lines were crossed from May 2006 with that of Triunfo Foods Products.  Mr. Cirilo is not a technical or network person, but was a manager in customer service.

11.     Mr. Cirilo advised AT&T in his letter dated July 16, 2007, that Verizon intended to pursue the collection of monies due from AT&T.

15

12.     Verizon issued the payments because Plaintiff was a Verizon customer.

13.     Verizon did not report the debt to any agency or process the bills from AT&T.

14.     Once AT&T was made aware of the billing problem, they did not properly handle it from their end.

15.     The calls if made by Three Brothers and not Plaintiff did not necessarily come via the Verizon switch.

16.     The prior local exchange carrier, US LEC, improperly retired the telephone number.

**Verizon:  Contested Facts:  Damages**

1.     Verizon never reported any debt of Plaintiff.

2.     The Plaintiff did not suffer any physical damages as a result of the alleged actions of Verizon.

3.     The Plaintiff did not suffer any economic damages as a result of the alleged actions of Verizon.

4.     Plaintiff did not seek professional help from a psychiatrist, counselor, therapist psychologist, or social worker regarding her claim of emotional distress, mental anguish or psychological injury.

5.     Plaintiff cannot prove that the reason she went to the hospital or sought any medical treatment, if at all, was because of any of the Defendant's actions, but rather was due to other causes, including other health reasons or events going on with her business or personal life.

6.     Plaintiff does not have an expert to causally connect her alleged damages to any negligence or tort by AT&T or Verizon.

7.     Plaintiff has not retained an expert to treat her for the emotional distress she alleges to have suffered from the actions of Verizon or AT&T.

**5. WITNESSES** (Aside from those called for impeachment purposes, only the witnesses set forth may testify at trial. No summary of testimony is necessary.)

A. Plaintiff:

      1.  AT&T Rodney Wyman (pursuant to subpoena)

      2.  Julio Cirilo (former Verizon employee- subject to subpoena)

      3.  Steve Varrone (Verizon)

      4.  Patt Cobb (Verizon)

      5.  Ron Purwin (Verizon)

      6.  Lissanka Jessica Alves

      7.  Marissa Cinqumani

      8.  Marissa Cinqumani

      9.  Clara Mejas

B. Defendant Verizon

Verizon Witnesses

      Verizon may call the following witnesses:

      1.  AT&T Rodney Wyman (pursuant to subpoena)

      2.  Julio Cirilo (former Verizon employee- subject to subpoena)

      3.  Steve Varrone (Verizon)

      4.  Patt Cobb (Verizon)

      5.  Ron Purwin (Verizon)

C.  Defendant, AT&T

      AT&T intends to call the following witnesses to prove its case in chief:

      Rodney Wyman
      c/o Anthony J. Zarillo, Jr.

Bevan, Mosca, Giuditta & Zarillo, P.C.
222 Mount Airy Road,
Basking Ridge, N.J. 07920

Marissa Cinqumani
c/o Anthony J. Zarillo, Jr.
Bevan, Mosca, Giuditta & Zarillo, P.C.
222 Mount Airy Road,
Basking Ridge, N.J. 07920

Clara Mejas (subject to subpoena)
c/o Ventantonio & Wildenhain PC
95 Mount Bethal Road
Warren, N.J. 07059


6. **EXPERT WITNESSES** (No expert shall be permitted to testify at trial unless identified below and unless a summary of his qualifications* and a copy of his report is attached hereto. The summary shall be read into the record at the time he takes the stand, and opposing counsel shall not be permitted to question his expert qualifications unless the basis or objection is set forth herein.)

A. Plaintiff: N/A

B. Defendant:  N/A

_____

*If the parties stipulate to an expert's qualifications, there is no need to attach a summary.


7. **DEPOSITIONS** List, by page and line, all deposition testimony to be offered into evidence. All irrelevant and redundant matters and all colloquy between counsel must be eliminated. Deposition testimony to be used solely for impeachment purposes need not be listed.)

A.      Plaintiff:

1.   The entire deposition of Rodney Wyman including but not limited to the following

lines and pages:  Page 17, line 25 thru 19-7. 21-4- 28-11, 28-12-29-2, 31-17-20, 38-15 – 39-7

64-9- 66-8, 69-1-19, 70-5-9 74-22- 75-1.

2.      The October 29, 2009 oral deposition of  Steven Varrone: 8-15 17-28

3.      The June 19, 2009 oral deposition of Julio Cirilo:
8-11
14
16-36
39-40
42
57-58
71-75

B.      Verizon may read the entire deposition of Rodney Wyman including but not limited to the following lines and pages:

Page 17, line 25 thru 19-7. 21-4- 28-11, 28-12-29-2, 31-17-20, 38-15 – 39-7

64-9- 66-8, 69-1-19, 70-5-9 74-22- 75-1.

C. Defendant AT&T

AT&T intends to read the following pages and lines of testimony taken from the October 29, 2009 oral deposition of Steven Varrone:

8-15
17-28

AT&T intends to read the following pages and lines of testimony taken from the June 19, 2009 oral deposition of Julio Cirilo:
8-11
14
16-36
39-40
42
57-58
71-75

8. **EXHIBITS** (Except for exhibits the need for which could not reasonably have been foreseen or which are used solely for impeachment purposes, only the exhibits set forth on the exhibit list attached hereto may be introduced at trial. All parties hereby agree that, unless set forth herein, objections to authenticity are deemed waived.)

A. Plaintiff: SEE ATTACHED EXHIBIT LIST.  **Subject to Plaintiff Objection to Authenticity and Redaction:**

**Exhibit No.**          **Date**          **Description**_____

B. Defendant Verizon: SEE ATTACHED EXHIBIT LIST.

**Exhibit No.**          **Date**          **Description**_____

C.  Defendant AT&T:  SEE ATTACHED LIST

9. **SINGLE LIST OF LEGAL ISSUES** (All issues shall be set forth below. The parties need not agree on any issue. Any issue not listed shall be deemed waived.)

## AT&T LEGAL ISSUES

### CERTAIN EVIDENCE MUST BE EXCLUDED BASED ON THE COURT'S SUMMARY JUDGMENT DECISION AND ORDER

Evidence of Plaintiff's personal and business economic losses is barred at trial.
Evidence of Plaintiff's alleged denial of credit is barred at trial.
Evidence of AT&T's alleged breach of contract is barred at trial.
Evidence of AT&T's and Verizon's alleged (Plaintiff's First, Second, Third, Fourth and Fifth Claims) statutory violations is barred at trial.

### GENERAL

Plaintiff cannot recover if she has failed to prove damages.
The Plaintiff's testimony alone cannot be held sufficient to prove she suffered damages.
In the event the Plaintiff proves she has suffered damages, her testimony alone is not sufficient for a jury to rely on to establish an amount of monetary damages.
Reliance on testimony by the Plaintiff alone in reaching a damages award would amount to speculation on the part of the jury.
A jury cannot rely on mere speculation in assessing a damages amount.
All Action taken by AT&T were in response to information provided by Verizon and any consequent liability rests with Verizon.

### DEFAMATION

Under New Jersey law, to establish a cause of action for defamation, Plaintiff must show:  (1) a defamatory statement of fact; (2) concerning the plaintiff; (3) which was false; (4) which was communicated to a person or persons other than the plaintiff; (5) with actual knowledge that the statement was false or with reckless disregard of the statement's truth or falsity or with negligence in failing to ascertain the truth or falsity; and (6) which caused damage.

AT&T will show that its communications to any person other than plaintiff were privileged communications in furtherance of a legitimate business purpose.

Plaintiff will be unable to establish that AT&T's statements were made with a reckless disregard for their truth or falsity.

Plaintiff will be unable to demonstrate that she suffered damages as a result of the alleged defamatory statements made by AT&T.


## COMMON LAW FRAUD

A finding of common law fraud requires:  (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by a defendant in its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance by the other person; and (5) resulting damages.

Plaintiff will be unable to demonstrate that she suffered damages as a result of the alleged common law fraud perpetrated by AT&T.


## INFLICTION OF EMOTIONAL DISTRESS

There are four elements in a claim for infliction of emotional distress.  The plaintiff has the burden of establishing the defendant (1) acted intentionally or recklessly, and (2) outrageously and (3) proximately caused (4) severe distress.

Plaintiff will be unable to prove that AT&T was aware that any alleged fraudulent statements were false.

Plaintiff will be unable to show that AT&T acted intentionally or recklessly.

An award for infliction of emotional distress cannot be made against AT&T in the event the underlying charge for defamation is not actionable against AT&T.

Plaintiff will be unable to show that AT&T's conduct was outrageous.

 Plaintiff will be unable to demonstrate that she suffered damages as a proximate result of any alleged actions on the part of AT&T.

## NEGLIGENCE

To prevail under a negligence claim against AT&T, the Plaintiff must establish four elements: (1) duty of care; (2) breach of that duty; (3) proximate cause; and actual damages suffered by the Plaintiff.

Plaintiff will be unable to demonstrate that AT&T's conduct was the proximate cause of any damage she suffered.

## PUNITIVE DAMAGES

The jury cannot consider an award for punitive damages as the Plaintiff failed to specifically plead punitive damages, as required by New Jersey law, in any of the remaining counts that were not dismissed by summary judgment.

To support an award of punitive damages against AT&T, the Plaintiff must prove by clear and convincing evidence that the harm alleged to have been suffered by the Plaintiff was the result of AT&T's actions or omissions and that AT&T's conduct either (1) was malicious or (2) acted in wanton and willful disregard of the Plaintiff's rights.

In the event punitive damages are awarded, they must be awarded specifically with respect to each defendant.

Punitive damages cannot be awarded with respect to an individual defendant if compensatory damages have not been awarded to that specific defendant.

Nominal damages cannot support an award of punitive damages.

A damage award for punitive damages on the part of AT&T is unsupported by the evidence because there is no evidence that AT&T acted maliciously against plaintiff to that it acted with a wanton and willful disregard for here rights..


## VERIZON LEGAL ISSUES

In addition to the legal issues raised in the motions in limine, the following seem to be issues that will become apparent at the time of trial of this matter.

1. Plaintiff will be limited in her proofs of damages. Based on Judge Walls' decision for summary judgment, the following must be barred at time of trial:
    1. Evidence of Plaintiff's personal and business economic losses;
    2. Evidence of Plaintiff's alleged denial of credit; and
    3. Evidence of Verizon's alleged statutory violations is barred at trial.
   Further, Plaintiff's testimony alone cannot be held sufficient to prove she suffered damages.


2. Plaintiff's ability to prove liability as to Verizon. As to liability, this is not a res ipsa case. Plaintiff needs to prove liability. Plaintiff's reliance on the testimony of Plaintiff alone will not be sufficient to prove her case. She needs an expert with knowledge of both inside and outside "plant", switching systems, telecommunication standards, telecommunication networks, the third party vendor known as Intrado, and competitive exchange carrier, in addition to experience with telephone billing. Plaintiff needs to prove that "Verizon acted negligently in failing to follow proper standards and proximately caused her injury". (from Page 8 of Judge Walls' order). An expert is required.

3. Plaintiff's allegation of common law fraud.

    a. A finding of common law fraud requires: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by a defendant in its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance by the other person; and (5) resulting damages. Plaintiff will be unable to demonstrate that she suffered damages as a result of the alleged common law fraud by Verizon. Plaintiff would have to prove that Verizon knew that its statements or actions were false. Plaintiff will not be able to prove this.

22

4.  Infliction of Emotional Distress
    a.  Plaintiff must establish the defendant (1) acted intentionally or recklessly, and (2) outrageously and (3) proximately caused (4) severe distress.  Plaintiff will be unable to prove that Verizon was aware that any alleged fraudulent statements were false. The outrageousness prong will be insurmountable, if even the Plaintiff is able to succeed on the intentional component.

5.  Negligence
    a.  To prevail under a negligence claim against AT&T, the Plaintiff must establish four elements:  (1) duty of care; (2) breach of that duty; (3) proximate cause; and actual damages suffered by the Plaintiff. Plaintiff will be unable to demonstrate that Verizon's conduct was the proximate cause of any damage she suffered.

6.  Punitive Damages
    a.  We respectfully adopt AT&T's argument concerning the failure of Plaintiff to specifically plead punitive damages, as required by New Jersey law, in any of the remaining counts that were not dismissed by summary judgment.
    b.  The Punitive Damages Act includes the following procedural requirements: Punitive damages must be specifically prayed for in the complaint.
    c.  To support an award of punitive damages against Verizon, the Plaintiff must prove by clear and convincing evidence that the harm alleged to have been suffered by the Plaintiff was the result of this defendant's actions or omissions and that Verizon's conduct either (1) was malicious or (2) acted in wanton and willful disregard of the Plaintiff's rights.
    d.  Punitive damages may be awarded only if compensatory damages have been awarded.  Nominal damages cannot support an award of punitive damages.
    e.  When there are two or more defendants, an award of punitive damages must be specific as to each defendant and each defendant is liable only for the award made against him or her.
    f.  Cap on punitive damages — five times the amount of compensatory damages or $350,000, whichever is greater.

7.  Hearsay – As addressed more fully in the motion in limine section, there are many issues of hearsay that appear : conversations with Triunfo, calls that Plaintiff's mother received, documents from medical facilities, and conversations with doctors.

8.  Jury Selection – Verizon seeks its own peremptory challenges

10. **MISCELLANEOUS** (Set forth any matters which require action or should be brought to the attention of the Court.)

11. **TRIAL COUNSEL** (List the names of trial counsel for all parties.)

Shmuel Klein for Plaintiff

Debra A. Sahler for Verizon New Jersey Inc.

For AT&T:

Anthony J. Zarillo, Jr.
Bevan, Mosca, Giuditta & Zarillo, P.C.
222 Mount Airy Road,
Basking Ridge, N.J. 07920
973-753-8300

William K. Mosca, Jr.
Bevan, Mosca, Giuditta & Zarillo, P.C.
222 Mount Airy Road,
Basking Ridge, N.J. 07920
973-753-8300

Howard Spierer
AT&T Services, Inc - General Attorney
One AT&T Way
Bedminster, NJ 07921
908-532-1902

12. **JURY TRIALS**

Not later than _____

A. Each party shall submit to the District Judge and to opposing counsel a trial brief in accordance with Local Rule 7.2 (SEE ATTACHED "RIDER ON LENGTH OF BRIEFS") with citations to authorities cited and arguments in support of its position on all disputed issues of law. **THE BRIEF SHALL ALSO ADDRESS ANY ANTICIPATED EVIDENCE DISPUTE. FAILURE TO BRIEF ANY ISSUE, INCLUDING AN EVIDENTIARY ISSUE WHICH SHOULD HAVE BEEN ANTICIPATED, WILL BE DEEMED TO BE A WAIVER OF SUCH ISSUE.** In the event a brief is not submitted, the delinquent party's pleading may be stricken.
B. Each party shall submit to the District Judge and to opposing counsel any hypothetical questions to be put to an expert witness on direct examination.

13. **JURY INSTRUCTIONS VOIR DIRE, NEUTRAL STATEMENT OF THE CASE AND VERDICT SHEET.**

Agreed-upon jury instructions, voir dire questions, verdict sheet and a neutral statement of the case to be read to the jury panel must be submitted ten (10) days prior to the trial date.  In the event counsel cannot agree, they are to contact the chambers of Magistrate Judge Claire C. Cecchi to schedule a conference to be conducted more than ten (10) days prior to the trial date. Jury instructions are to be submitted in the standard format:

A. The parties shall also confer and agree upon a verdict sheet and shall follow the above designated procedure for arriving at jointly agreed upon instructions where applicable.

B. Counsel shall also confer and agree upon a neutral statement summarizing the case that the Court can use in orienting the panel as to the kind of case this is.

C. The parties are required to jointly submit one set of agreed upon instructions.

It is not enough for the parties to merely agree upon the standard general instructions, and then each submit their own set of substantive instructions. The parties are expected to meet, confer and agree upon the substantive instructions for the case.

To accomplish this the parties are required to serve their proposed instructions upon each other three weeks prior to trial. The parties then are required to meet or confer and submit to the Court one complete set of agreed upon instructions.

D. If the parties cannot agree upon one complete set of instructions, they are required to submit one set of those instructions that have been agreed upon, and each party should submit a supplemental set of only those instructions which are not agreed upon.

E. These joint instructions and supplemental instructions must be filed one week prior to trial. Each party should then file, two days before trial, its objections to the non-agreed upon instructions proposed by the other party. Any and all objections shall be in writing and shall set forth the proposed instruction in its entirety. The objections should then specifically set forth the objectionable material in the proposed instruction. The objection shall contain citation to authority explaining why the instruction is improper and a concise statement of argument concerning the instruction. Where applicable, the objecting party shall submit an alternative instruction governing the subject or principle of law.

F. The parties are required to submit the proposed joint set of instructions and proposed supplemental instructions in the following format:

(I) There must be two sets of each instruction;

(ii) The first copy should indicate the number of the proposed instruction, and the authority supporting the instruction; and

(iii) The second copy should contain only the proposed instruction - there should be no other marks or writings on the second copy except for a heading reading "Instruction # __" with the number left blank.

(iv) The parties shall also submit to the Deputy Clerk where possible a 3.5" disc in Word Perfect (preferably version 12) containing the second copy referenced in paragraph (iii).

G. All instructions should be short, concise, understandable and neutral statements of law. Argumentative or formula instructions are improper, and will not be given and should not be submitted.

H. Parties should also note that any modifications of instructions from statutory authority, or Devitt, Blackmar & O'Malley (or any other form instructions) must specifically state the modification made to the original form instruction and the authority supporting the modification.

I. The parties are required to jointly submit a set of agreed upon voir dire questions. Accordingly, the parties are required to serve their proposed voir dire upon each other three weeks prior to trial and shall follow the above designated procedure for arriving at jointly agreed upon instructions where applicable. Failure to comply with any of the above instructions may subject the non-complying party and/or its attorneys to sanctions.

## 14. **NON-JURY TRIALS**

At the final pretrial conference, or as directed by the Magistrate Judge:

A. Each party shall submit to the District Judge and to opposing counsel a trial brief in accordance with General Rule 27 (SEE ATTACHED "RIDER ON LENGTH OF BRIEFS") with citations to authorities cited and arguments in support of its position on all disputed issues of law. **THE BRIEF SHALL ALSO ADDRESS ANY ANTICIPATED EVIDENCE DISPUTE. FAILURE TO BRIEF ANY ISSUE, INCLUDING AN EVIDENTIARY ISSUE WHICH SHOULD HAVE BEEN ANTICIPATED, WILL BE DEEMED TO BE A WAIVER OF SUCH ISSUE.** In the event a brief is not submitted, the delinquent party's pleading may be stricken.

B. Each party shall submit to the District Judge and to opposing counsel proposed Findings of Fact and Conclusions of Law.

C. Each party shall submit to the District Judge and to opposing counsel any hypothetical questions to be put to an expert witness on direct examination.

## 15. **BIFURCATION** (When appropriate, liability issues shall be severed and tried to verdict. Thereafter, damage issues will be tried.)
The issues of liability and damages **TBD**  be tried separately.

Plaintiff will respectfully demand that liability and damages be tried together.

AT&T and Verizon will respectfully demand that liability and damages be tried separately.

## 16. **ESTIMATED LENGTH OF TRIAL**
2 4_____ days for liability and 1_____ days for damages.

26

17. **TRIAL DATE** _____

**AMENDMENTS TO THIS PRETRIAL ORDER SHALL NOT BE PERMITTED UNLESS THE COURT DETERMINES THAT MANIFEST INJUSTICE WOULD RESULT IF THE AMENDMENT IS DISALLOWED. THE COURT MAY FROM TIME TO TIME SCHEDULE CONFERENCES AS MAY BE REQUIRED EITHER ON ITS OWN MOTION OR AT THE REQUEST OF COUNSEL.**

_____

(Attorney for Plaintiff)




_____

(Attorney for Defendant, AT&T Corp.)

_____

(Attorney for Defendant, Verizon New Jersey Inc)




_____

**CLAIRE C. CECCHI**

**UNITED STATES MAGISTRATE JUDGE**

Dated: